IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DAVID DER SARKISSIAN,

      Plaintiff,

v.                                    Civil Action No. 1:05CV144
                                                (STAMP)

WEST VIRGINIA UNIVERSITY
BOARD OF GOVERNORS d/b/a
WEST VIRGINIA UNIVERSITY
SCHOOL OF MEDICINE and
DR. SHELLEY NUSS,

      Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
AND PARTIAL MOTION FOR SUMMARY JUDGMENT**

I.  Background

Dr. David Der Sarkissian filed suit against the West Virginia University Board of Governors, d/b/a West Virginia University School of Medicine ("WVU"), and Dr. Michelle "Shelley" Nuss alleging various causes of action arising out of the circumstances surrounding Dr. Der Sarkissian's termination from the medical residency program at WVU. The amended complaint contains six counts which allege that the defendants committed constitutional, contractual and tort violations in disciplining Dr. Der Sarkissian and in ultimately terminating him from the residency program. Specifically, the amended complaint alleges that the defendants violated Dr. Der Sarkissian's due process rights, the Americans with Disabilities Act ("ADA"), and Titles VI and VII of the Civil

Rights Act of 1964. Additionally, Dr. Der Sarkissian asserts claims for breach of contract and defamation.

The defendants filed a motion to dismiss the first amended complaint and partial motion for summary judgment. The motion has been fully briefed by the parties. Following review of the defendants' motion, and the responses and replies thereto, this Court finds that the defendants' "motion to dismiss first amended complaint and partial motion for summary judgment" (hereinafter "motion to dismiss") must be granted in part and denied in part for the reasons stated below.

## II. <u>Facts</u>

Dr. Der Sarkissian holds a Doctor of Medicine degree from St. Georges University, Grenada, West Indies. In late June or early July 2004, he entered employment with the West Virginia School of Medicine as a medical resident for the academic year of 2004-2005. In October 2004, three women made written complaints regarding Dr. Der Sarkissian which alleged that certain conduct by him constituted a violation of WVU's sexual harassment policy. An investigation of the allegations was conducted by the Office of Social Justice of WVU and a report was filed with Dr. Nuss. On October 22, 2004, Dr. Nuss informed Dr. Der Sarkissian that he had violated WVU's sexual harassment policy and that, therefore, he would be placed on probation. On November 17, 2004, Dr. Nuss wrote

a letter memorandum to Dr. Der Sarkissian informing him that his probation would last for a four-month period.

On February 2, 2005, Dr. Nuss informed Dr. Der Sarkissian by letter that he was being placed on academic probation for the remainder of the academic year (through June 30, 2005) based on a finding by the clinical competency committee that his performance in clinical rotations was inadequate. On February 14, 2005, Dr. Nuss sent a letter to Dr. Der Sarkissian informing him that WVU had determined not to renew his contract for the next academic year (July 1, 2005 - June 30, 2006) based on ongoing performance and professionalism issues. On February 17, 2005, Dr. Nuss gave Dr. Der Sarkissian a written notice of termination of employment with WVU, citing alleged violations of his probation for continued unprofessional conduct in the workplace. Subsequently, Dr. Der Sarkissian availed himself of level I and level II internal grievance proceedings at WVU. At both levels, the relief he sought was denied. Dr. Der Sarkissian requested a level III grievance hearing with the President of WVU, David Hardesty, but ultimately withdrew that request. Thereafter, Dr. Der Sarkissian filed this civil action.

### III. <u>Legal Standards</u>

A. <u>Motion to Dismiss</u>

In assessing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a court must accept

3

the factual allegations contained in the complaint as true. Advanced Health Care Servs., Inc. v. Radford Cmty. Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Dismissal is appropriate pursuant to Rule 12(b)(6) only if "'it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim.'" Id. at 143-44 (quoting Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969)); see also Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989).

Stated another way, it has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 294 (2d ed. 1990). The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact. Id. § 1356, at 298. For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and essentially the court's inquiry is directed to whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a). Id. § 1357, at 304, 310.

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted only in very limited circumstances. Rogers, 883 F.2d at 325. A dismissal under Rule 12(b)(6) is granted only in cases in which the allegations raised in the complaint clearly demonstrate that the plaintiff does not have a claim and that no set of facts would support the plaintiff's claim. 5A Wright & Miller, supra § 1357, at 344-45.

B.   Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere

allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party

opposing the motion.  See Matsushita Elec. Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574, 587 (1986).

IV.  Discussion

A.  Count I: Due Process

Dr. Der Sarkissian alleges that WVU and Dr. Nuss as Program

Director of the Internal Medicine Department of WVU violated his

due process rights pursuant to the Due Process clauses of the West

Virginia Constitution and the Fifth and Fourteenth Amendments of

the United States Constitution by failing to use appropriate

procedures when determining whether to place him on probation and

whether to terminate him from the medical residency program.  The

defendants argue that Dr. Der Sarkissian's due process claims are

barred by the Eleventh Amendment and must be dismissed pursuant to

Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter

jurisdiction and Federal Rule of Civil Procedure 12(b)(6) for

failure to state a claim.[1]  In response, Dr. Der Sarkissian

contends that the defendants have waived the right to assert

---

[1]The Fourth Circuit has not conclusively established whether
a dismissal based on Eleventh Amendment immunity is a dismissal for
lack of subject matter jurisdiction under Rule 12(b)(1) or for
failure to state a claim under Rule 12(b)(6).  See Andrews v. Daw,
201 F.3d 521, 525 n.2 (4th Cir. 2000)(citing Fourth Circuit cases
supporting each alternative).  For the purposes of resolving the
defendants' motion to dismiss, it is unnecessary to decide which
provision of Rule 12 more appropriately applies.  Thus, this Court
will assume, without deciding, that a dismissal based on the
Eleventh Amendment is one for failure to state a claim under Rule
12(b)(6).

7

Eleventh Amendment immunity by failing to "squarely present" the defense earlier in this litigation.

As a general rule, the Eleventh Amendment to the United States Constitution grants sovereign immunity to states from suits brought by private citizens in federal court. Specifically, the Eleventh Amendment prohibits "any suit . . . against one of the United States by citizens of another State." U.S. Const. Amend. XI. As interpreted, this provision also provides immunity to state agencies, see Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984), and, subject to an exception where injunctive relief is sought, to state officials acting in their official capacities. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). It is undisputed that WVU is an agency of the State of West Virginia, and that Dr. Nuss, as Program Director of the Internal Medicine Department at WVU, is a state official. See West Virginia Univ. Bd. of Trs. v. Graf, 516 S.E.2d 741, Syl. Pt. 1 (W.Va. 1998)("[t]he Board of Governors of West Virginia University is a State agency").

The United States Court of Appeals for the Fourth Circuit has noted that "the Eleventh Amendment has attributes of both subject-matter jurisdiction and personal jurisdiction." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 480 (4th 2005). Like personal jurisdiction, Eleventh Amendment immunity may be waived by the state, but, like subject-matter jurisdiction, the

immunity may be raised at any time during the litigation.  Id. at 481 (citing Pennhurst, 465 U.S. at 98).  Even though the defendants in this case pled sovereign immunity as an affirmative defense in their answer, Dr. Der Sarkissian argues that the defendants have waived their Eleventh Amendment immunity by failing to "squarely present" the defense to this Court prior to filing their motion to dismiss.  This argument is without merit.  An Eleventh Amendment immunity defense "sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court."  Edelman v. Jordan, 415 U.S. 651, 678 (1974); see also In re Creative Goldsmiths of Washington, D.C., Inc., 119 F.3d 1140, 1144 (4th Cir. 1997)(considering an Eleventh Amendment defense raised for the first time on appeal).  In this case, the defendants did indeed raise the immunity defense before this district court by pleading it in their answer.  Thus, the defendants have not waived the right to raise the Eleventh Amendment as a defense.

    1.  West Virginia University

Because WVU is a state agency, it is immune from suit as to Dr. Der Sarkissian's due process claim unless Congress has abrogated immunity or WVU has consented to suit.[2]  Dr. Der

---

[2]The amended complaint asserts due process violations arising out of the Fifth and Fourteenth Amendments of the United States Constitution and the due process clause of the West Virginia constitution.  The Fifth Amendment of the United States constitution, however, is inapplicable in this case because it applies only to the actions of the federal government, not the actions of states.

Sarkissian asserts his due process claim under 42 U.S.C. § 1983, which provides a federal cause of action for alleged violations of the constitution or laws of the United States. It is well established that Congress did not abrogate the Eleventh Amendment immunity of states when it enacted 42 U.S.C. § 1983. <u>Quern v. Jordan</u>, 440 U.S. 332 (1979). Further, WVU has not consented to suit in this case.[3] Therefore, under the Eleventh Amendment, WVU is immune from suit as to the due process claims pursuant to both the Fourteenth Amendment and the West Virginia constitution. Accordingly, Dr. Der Sarkissian fails to state a claim upon which relief can be granted, and the defendants' motion to dismiss is granted as to WVU on Count I in its entirety.

2. <u>Dr. Nuss in Her Official Capacity</u>

Although the Eleventh Amendment prohibits suits for money damages against states and state officials, it does not bar suits against state officials for prospective injunctive relief. <u>Ex</u>

---

[3]"A state may waive its constitutional immunity and consent to suit in federal court, and when it does so, the eleventh amendment will not bar the action." <u>Westinghouse Elec. Corp. v. West Virginia Dep't of Highways</u>, 845 F.2d 468, 470 (4th Cir. 1988)(citing <u>Clark v. Barnard</u>, 108 U.S. 436 (1883)). A state can waive its immunity in one of two ways: "(1) directly by statutory or constitutional provision, or (2) 'constructively,' by voluntarily participating in a federal program when Congress has expressly conditioned state participation in that program on the state's consent to suit in federal court." <u>Id.</u> (<u>citing</u> <u>Atascadero State Hosp. v. Scanlon</u>, 473 U.S. 234 (1985)). Neither means of waiver can be found here.

Parte Young, 209 U.S. 123 (1908). The exception to Eleventh Amendment immunity announced in Ex Parte Young applies where the plaintiff "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 496 (4th Cir. 2005)(internal citations omitted).

In Count I, Dr. Der Sarkissian alleges an ongoing violation of federal constitutional due process rights. As relief, Dr. Der Sarkissian seeks reinstatement as a medical resident, expungement of information regarding the alleged sexual harassment violation from his academic record, an injunction prohibiting WVU and its employees from disclosing information to third parties regarding the alleged violation, and compensatory damages. To the extent that Dr. Der Sarkissian seeks money damages against Dr. Nuss in her official capacity as Program Director, the recovery of such damages is prohibited by the Eleventh Amendment. However, Dr. Der Sarkissian does seek certain relief that may be properly characterized as prospective.[4] Accordingly, the defendants' motion to dismiss is denied to the extent that Dr. Der Sarkissian seeks

---

[4]Reinstatement is generally considered to be prospective in effect and thus falls outside the prohibition of the Eleventh Amendment. Hall v. Med. Coll. of Ohio at Toledo, 742 F.2d 299, 307 (6th Cir. 1984)(finding that reinstatement of a medical student constituted prospective injunctive relief). Additionally, although Dr. Der Sarkissian's academic record was created in the past, expungement of that record has an ongoing and prospective effect. See Gomes v. Univ. Maine Sys., 304 F. Supp. 2d 117, 122 (D. Me. 2004).

prospective injunctive relief against Dr. Nuss in her official capacity.

### 3. Dr. Nuss in Her Individual Capacity

Dr. Der Sarkissian argues that he has sued Dr. Nuss in her individual as well as her official capacity. He argues that, by alleging in the amended complaint "intentional and willful" behavior on the part of Dr. Nuss, he has asserted claims against Dr. Nuss in her individual capacity. The defendants argue that Dr. Der Sarkissian has never alleged a claim against Dr. Nuss in her individual capacity.

Where a plaintiff fails to specifically allege such capacity, the United States Court of Appeals for the Fourth Circuit follows what is commonly referred to as the "course of proceedings" test to determine the capacity in which an official has been sued. Biggs v. Meadows, 66 F.3d 56, 61 (4th Cir. 1995). Under the "course of proceedings" test, "the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." Id. The Fourth Circuit has identified the following factors as indicative of an intent to hold a defendant personally liable: the plaintiff's failure to allege that the defendant acted in accordance with a state policy or custom; the plaintiff's request for compensatory or punitive damages, since

such relief is unavailable in official capacity suits; and the nature of any defenses raised by the defendant.

In this case, Dr. Der Sarkissian's intention to hold Dr. Nuss personally liable can be "ascertained fairly" from the pleadings. See id. In addition to injunctive relief, Dr. Der Sarkissian seeks compensatory damages in the amount of $5 million as to each count and punitive damages as to the defamation count. It would have been "illogical and futile" for Dr. Der Sarkissian to sue Dr. Nuss in her official capacity only and then request a form of relief that would be clearly unavailable to him in such suit. See id. Additionally, in their answer to the amended complaint, the defendants asserted that they are entitled to qualified immunity. The assertion of a qualified immunity defense suggests that the defendants perceived the amended complaint to bring a claim against Dr. Nuss in her individual capacity since qualified immunity is unavailable in official capacity suits. Thus, the defendants will not be prejudiced if the amended complaint is treated as asserting individual capacity claims. Overall, the relevant factors in this case demonstrate that Dr. Der Sarkissian intended to sue Dr. Nuss in her individual as well as her official capacity.

State officials performing discretionary functions are generally shielded from individual capacity liability for civil damages under § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

13

reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). Such qualified immunity is an affirmative defense and the burden of pleading it "rests with the defendant." <u>Gomez v. Toledo</u>, 446 U.S. 635, 640 (1980). In this case, the defendants pled the affirmative defense of qualified immunity in their answer to the initial complaint. The defendants did not, however, mention qualified immunity in their motion to dismiss or reply thereto. Because the defendants failed to provide any explanation as to how or why qualified immunity might apply, this Court defers ruling on the application, if any, of qualified immunity to Dr. Nuss in her individual capacity. Accordingly, the defendants' motion to dismiss is denied as to Dr. Nuss in her individual capacity on Count I.

B. <u>Count II: Failure to Accommodate</u>

In Count II of the amended complaint, Dr. Der Sarkissian alleges that the defendants have failed to comply with the provisions of Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131, <u>et seq.</u>, by allegedly unlawfully discharging Dr. Der Sarkissian from the medical residency program because of his Attention Deficit Hyperactivity Disorder ("ADHD"). The defendants argue, for the first time, in their motion to dismiss that Dr. Der Sarkissian's claim must be dismissed for failure to exhaust administrative remedies. Dr. Der Sarkissian argues that the defendants have waived the right to raise a failure

to exhaust administrative remedies defense because they did not plead the defense in their answer. The resolution of the waiver issue as briefed by the parties is unnecessary, however, because exhaustion of administrative remedies is not required before filing suit under Title II of the ADA. Roe v. County Comm'n of Monongalia County, 926 F. Supp. 74, 77 (N.D. W. Va. 1996)("Because [Title II] does not require exhaustion of administrative remedies, the complainant may elect to proceed with a private suit at any time."). Thus, because Dr. Der Sarkissian need not have availed himself of established grievance procedures with regard to his Title II claim, the claim will not be dismissed for failure to exhaust administrative remedies.

Additionally, the defendants are not entitled to Eleventh Amendment immunity on this count. Although the Eleventh Amendment generally provides states, state agencies, and state officials immunity from private suit in federal court, Congress may abrogate this immunity pursuant to a valid exercise of its constitutional power under Section 5 of the Fourteenth Amendment to enforce the substantive guarantees of the amendment. See Tenn. v. Lane, 541 U.S. 509, 518 (2004). To determine whether Congress had the authority to abrogate sovereign immunity, courts must resolve two predicate questions: (1) whether Congress unequivocally expressed its intent to abrogate sovereign immunity in the statute at issue, and (2) whether Congress acted pursuant to a valid grant of

constitutional authority. <u>Kimel v. Fla. Bd. of Regents</u>, 528 U.S. 62, 73 (2000)(citing <u>Seminole Tribe v. Fla.</u>, 517 U.S. 44, 55 (1996)).

The first question is easily answered. As to ADA claims, Congress has unequivocally expressed the intent to abrogate state immunity from suit. A provision of the ADA explicitly provides: "A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202. The remaining question, then, "is whether Congress had the power to give effect to its intent." <u>Tenn. v. Lane</u>, 541 U.S. 509, 518 (2004). The answer to this second question is not as straightforward as the answer to the first.

The United States Supreme Court applies a three-part "congruence and proportionality" test, first established in <u>City of Boerne v. Flores</u>, 521 U.S. 507, 520 (1997), to determine whether Congress has acted within the scope of its Section 5 power to abrogate sovereign immunity. <u>See</u> <u>Lane</u>, 541 U.S. at 518-534. Under the "congruence and proportionality" test, a court must: (1) identify the constitutional right that Congress sought to enforce when it enacted the statute in question, <u>see</u> <u>Bd. of Trs. of Univ. of Ala. v. Garrett</u>, 531 U.S. 356, 365 (2001); (2) determine whether Congress identified a history and pattern of unconstitutional conduct by the States; and if so, (3) analyze whether the statute

is an appropriate, congruent, and proportional response to the history and pattern of unconstitutional treatment.  See Garrett, 531 U.S. at 374; see also Miller v. King, 384 F.3d 1248, 1269 (11th Cir. 2004).  The Supreme Court's application of this test in Garrett and Lane and the Fourth Circuit's application in Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474 (4th Cir. 2005), inform the analysis in this case.

In Garrett, the Court addressed whether Congress validly abrogated Eleventh Amendment immunity such that private citizens may recover money damages against the States for failure to comply with Title I of the ADA, which prohibits discrimination in employment on the basis of disability.  Following an examination of the legislative record, the Garrett Court concluded that Congress did not identify a sufficient history and pattern of unconstitutional employment discrimination by the States against the disabled.  Garrett, 531 U.S. at 370.  The incidents of such discrimination in the record "[fell] far short of even suggesting the pattern of unconstitutional discrimination on which § 5 legislation must be based."  Id.  Therefore, the Court held that, despite the intent of Congress to abrogate immunity, States are immune under the Eleventh Amendment from suits alleging employment discrimination pursuant to Title I of the ADA.

Three years later, the Court addressed a question expressly left unresolved in Garrett: whether Congress had the constitutional

17

authority to abrogate States' Eleventh Amendment immunity from suit for claims brought pursuant to Title II of the ADA, which prohibits discrimination in the provision of public services.[5]  <u>Tenn. v. Lane</u>, 541 U.S. 509 (2004).  Unlike its decision in <u>Garrett</u>, which addressed the issue of sovereign immunity as to Title I as a whole, the Court in <u>Tennessee v. Lane</u> limited its decision to the particular type of discrimination claims at issue in that case –– Title II claims alleging disability discrimination in access to courthouses.  <u>Lane</u>, 541 U.S. at 530-31 (stating that "nothing in our case law requires us to consider Title II, with its wide variety of applications, as an undifferentiated whole").

In <u>Lane</u>, the Court again looked to the legislative record to determine if it evidenced a history and pattern of discrimination by States in the provision of public services.  The Court identified many systematic deprivations of rights by States in the areas of voting, marrying, serving as jurors, unjustified commitment, abuse and neglect in mental health hospitals, zoning, the penal system, and public education.  <u>Id.</u> at 524-25.  Thus, the Court concluded that the second prong of the congruence and proportionality test was satisfied because "Congress enacted Title II against a backdrop of pervasive unequal treatment in the administration of state services and programs . . . ."  <u>Id.</u> at 524.

---

[5]The Court in <u>Garrett</u> explicitly declined to decide whether Congress validly abrogated immunity under Title II of the ADA because the parties did not brief the issue.

Under the third prong of the test, the Court found that the remedial measures contained in Title II constitute a congruent and proportional response to enforce the constitutional right of access to the courts. Id. at 530. Therefore, the Court held that "Title II, as it applies to the class of cases implicating the fundamental right of access to the courts, constitutes a valid exercise of Congress' § 5 authority" to abrogate Eleventh Amendment immunity.

In 2005, on the heels of the Lane decision, the Fourth Circuit in Constantine v. Rectors and Visitors of George Mason University was presented with the question of whether Congress had authority to abrogate immunity under Title II as it applies to provision of public higher education by the States. Following a detailed application of the congruence and proportionality test, the Court found that "Title II of the ADA is valid § 5 legislation, at least as it applies to public higher education." Id. at 490. Therefore, the Court held that the Eleventh Amendment poses no bar to a claim under Title II alleging state discrimination in the provision of higher education. Id.

Garrett, Lane, and Constantine provide the framework for analyzing the sovereign immunity question presented in this case, but specific guidance from the Supreme Court or the Fourth Circuit is presently absent where the plaintiff asserts an employment, or quasi-employment, claim under Title II of the ADA rather than Title

19

I.[6]     Although the <u>Lane</u> Court found a pattern of state discrimination against the disabled that was "clear beyond peradventure" in the provision of public services, the <u>Garrett</u> Court found only minimal evidence of unconstitutional state discrimination in employment.

In this case, Dr. Der Sarkissian alleges that he was unlawfully discharged from his medical residency position at WVU -- a position that has both academic and employment characteristics. At least one court, relying on <u>Garrett</u>, has held that Congress did not validly abrogate sovereign immunity with regard to state employment discrimination actions brought under Title II. <u>Clifton v. Georgia Merit Sys.</u>, 2007 WL 734186 (N.D. Ga. Mar. 6, 2007)("a plaintiff should not be permitted to circumvent the holding of <u>Garrett</u> immunizing states from employment discrimination claims brought pursuant to Title I of the ADA by commencing suit under Title II . . ."). Nonetheless, because this Court concludes that

---

[6]Title II states that no qualified individual with a disability shall "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. The federal courts are currently divided over whether Title II creates a cause of action for employment discrimination. <u>See</u> Lex K. Larson, <u>Employment Discrimination</u> § 152.04[2][c] (2d ed.). The United States Court of Appeals for the Fourth Circuit has assumed that Title II can be used for employment discrimination claims without expressly analyzing the issue. <u>Id.</u> (citing <u>Rogers v. Dep't of Health & Env't Control</u>, 174 F.3d 431 (4th Cir. 1999)(deciding on the merits a Title II claim against the State in its capacity as an employer)). Therefore, this Court also assumes, without deciding, that Title II is available for employment discrimination claims.

20

a medical residency is more akin to a program of higher education than an employment position,[7] the Fourth Circuit's decision in Constantine controls.  The court in Constantine held that, as applied to higher education, the remedial measures contained in Title II represent a congruent and proportional response to the history and pattern of unconstitutional disability discrimination in public services that was identified in Lane.  See Constantine, 411 F.3d at 490.  After Constantine, it is settled that, at least in this circuit, States do not have immunity from claims pursuant to Title II of the ADA, as it applies to the provision of public higher education.  Therefore, Constantine controls the Eleventh Amendment inquiry on Count II, the failure to accommodate claim. Because Congress has validly abrogated immunity under Title II of

_____

[7]The Fifth Circuit in Davis v. Mann has described the nature of a medical residency as follows:

> It is well-known that the primary purpose of a residency program is not employment or a stipend, but the academic training and the academic certification for successful completion of the program.  The certificate, like the diploma, tells the world that the resident has successfully completed a course of training and is qualified to pursue further specialized training or to practice in specified areas.

882 F.2d 967, 974 (5th Cir. 1989).  Other circuits considering the issue have also treated medical residents as students of higher education, not employees.  See Ezekwo v. N.Y.C. Health & Hosps. Corp., 940 F.2d 775, 784 (2d Cir. 1991)(applying due process standard for student disciplinary actions to a medical resident who had been denied the Chief Resident position); Fenje v. Feld, 398 F.3d 620, 624-27 (7th Cir. 2005) (concluding that medical resident was dismissed for academic reasons).

the ADA as it applies to public higher education, WVU and Dr. Nuss in her official capacity are not immune from suit for money damages on this Count. Accordingly, Count II of the amended complaint will not be dismissed as to WVU and Dr. Nuss in her official capacity.

The defendants' motion to dismiss is granted, however, to the extent that the amended complaint asserts a Title II claim against Dr. Nuss in her individual capacity. Title II of the ADA applies only to public entities. See 42 U.S.C. § 12131. The term "public entity," as defined by the statute, does not include individuals. Therefore, Dr. Der Sarkissian fails to state a claim against Dr. Nuss in her individual capacity.

C.   Count III: Retaliation

In Count III of the amended complaint, Dr. Der Sarkissian alleges that he was discharged as a result of his opposition to the manner in which the defendants handled the sexual harassment allegations against him. Pursuant to 42 U.S.C. § 12203(a), "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] . . . ."

Dr. Der Sarkissian was not required to exhaust administrative remedies as to this retaliation claim because the claim is based on alleged acts and practices made unlawful by Title II, which does not require exhaustion of remedies. See Cable v. Dep't of Developmental Servs. of Cal., 973 F. Supp. 937 (C.D. Cal. 1997).

Additionally, the defendants are not entitled to Eleventh Amendment immunity. Although the holding in <u>Constantine</u> arose in the context of a Title II claim, the holding necessarily applies by analogy to a claim brought pursuant to Title V of the ADA, at least where, as here, the claims are predicated on alleged violations of Title II. <u>See</u> <u>Demshki v. Montheith</u>, 255 F.3d 986 (9th Cir. 2001)(applying <u>Garrett</u>, a Title I case, to retaliation claims brought under Title V of the ADA because the retaliation claims were predicated on alleged violations of Title I). Therefore, WVU and Dr. Nuss in her official capacity are not entitled to sovereign immunity from Dr. Der Sarkissian's Title V retaliation claim.

The defendants' motion to dismiss is granted, however, to the extent that the amended complaint asserts an ADA claim against Dr. Nuss in her individual capacity because "the ADA does not permit an action against individual defendants for retaliation for conduct protected by the ADA." <u>Baird v. Rose</u>, 192 F.3d 462 (4th Cir. 1999).

D.    <u>Count IV: Discrimination</u>

Dr. Der Sarkissian is a United States citizen of Iranian descent. In Count IV of the amended complaint, Dr. Der Sarkissian alleges that the defendants discriminated against him on the basis of his national origin. The amended complaint sets forth a claim that the defendants' employment practices violated "Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000d [sic]."

Dr. Der Sarkissian also alleges that WVU, as his employer, receives federal assistance within the meaning of 42 U.S.C. § 2000d. Dr. Der Sarkissian appears to confuse Title VI of the Civil Rights Act, 42 U.S.C. § 2000d, _et seq._, which prohibits discrimination by government agencies that receive federal funding, with Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, _et seq._, which prohibits discrimination by all manner of covered employers. To the extent that Dr. Der Sarkissian's complaint can be construed to assert an employment discrimination claim under both Title VI and Title VII,[8] both have been considered here and both must be dismissed for failure to state a claim upon which relief can be granted.

Title VI creates a general prohibition against discrimination by federally funded programs.[9] Unlike Title VII, however, Title VI does not provide a sweeping prohibition as to employment discrimination. Indeed, the language of Title VI specifically

---

[8]In their motion to dismiss the first amended complaint and partial motion for summary judgment, the defendants assume that Dr. Der Sarkissian has advanced a claim under both Title VI and Title VII and provide briefing as to both.

[9]Title VI states:

"No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

42 U.S.C. § 2000d.

limits the ability of a plaintiff to assert claims for employment related discrimination under Title VI:

> Nothing contained in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization except where a primary objective of the Federal financial assistance is to provide employment.

42 U.S.C. § 2000d-3. In order to state a claim for employment discrimination under Title VI, a plaintiff is required to show that the defendant receives federal funds for the "primary objective" of providing employment. <u>See</u> <u>Trageser v. Libbie Rehab. Ctr., Inc.</u>, 590 F.2d 87, 89 (4th Cir. 1978)(noting that Title VI does not provide a judicial remedy for employment discrimination by institutions receiving federal funds unless providing employment is a primary objective of the federal aid or discrimination in employment necessarily causes discrimination against the primary beneficiaries of the federal aid), <u>overruled on other grounds</u> by <u>Consolidated Rail Corp. v. Darrone</u>, 465 U.S. 624, 628-31 (1984).

In this case, although the amended complaint alleges that WVU receives federal funds, there is no allegation or any indication elsewhere in the record that those funds are received for the primary objective of providing employment. Nor is there any allegation that the alleged employment practices caused discrimination against the primary beneficiaries of the federal aid. Accordingly, no genuine issue of material fact exists and both WVU and Dr. Nuss in her official and individual capacities are

entitled to judgment as a matter of law as to Dr. Der Sarkissian's Title VI claim.

On the other hand, employment discrimination claims brought pursuant to Title VII of the Civil Rights Act are not limited by the "primary objective" inquiry. Title VII makes it an unlawful employment practice for any covered employer to discriminate against an employee on the basis of national origin. See 42 U.S.C. § 2000e-2. Despite the broader scope of Title VII as to employment discrimination claims, the defendants assert that Dr. Der Sarkissian's claim under Title VII must also be dismissed. The defendants argue that Dr. Der Sarkissian failed to exhaust his administrative remedies.

"It is axiomatic that a claimant under Title VII must exhaust his administrative remedies by raising his claim before the EEOC." Sloop v. Mem'l Mission Hosp., Inc., 198 F.3d 147, 148 (4th Cir. 1999)(dismissing plaintiff's Title VII retaliation claim for failure to exhaust administrative remedies); see also Love v. Pullman Co., 404 U.S. 522 (1972). In order to exhaust administrative remedies under Title VII in West Virginia, a "deferral" state, a plaintiff must file a complaint with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged unlawful employment practice. Haught v. The Louis Berkman, LLC, 377 F. Supp. 2d 543, 552 (N.D. W. Va. 2005)(citing Mohasco

<u>Corp. v. Silver</u>, 447 U.S. 807 (1980)); <u>see also</u> 42 U.S.C. § 2000e-5(e)(1).

In this case, Dr. Der Sarkissian did not file a charge with the EEOC or with the West Virginia Human Rights Commission ("WVHRC") before filing a civil complaint in this Court.[10] Dr. Der Sarkissian does not dispute that he has not exhausted his administrative remedies. Rather, Dr. Der Sarkissian argues that the defendants have waived the right to raise an exhaustion of administrative remedies defense because the defendants raised the defense for the first time in their motion to dismiss.

The Title VII administrative exhaustion requirement is not a jurisdictional requirement. <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385, 393 (1982). Rather, as Dr. Der Sarkissian correctly notes, the requirement, "like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." <u>Id.</u> The defendants here did not raise exhaustion of administrative remedies as a defense in their answer. Nonetheless, the defendants raised the defense in their motion to dismiss. Because the defendants argued the exhaustion issue in a responsive pleading, the defense will not be considered waived.

---

[10]In his deposition, Dr. Der Sarkissian admitted that he has not filed a complaint with either the EEOC or the WVHRC. Dr. Der Sarkissian testified that his employment with WVU was terminated on or about February 22, 2005. Applying the 300-day limitation, Dr. Der Sarkissian had until December 19, 2005 to file a complaint with the appropriate agency. Instead of filing an administrative claim, Dr. Der Sarkissian filed this suit on October 20, 2005.

Accordingly, because exhaustion is a prerequisite to filing a Title VII claim in federal court and because Dr. Der Sarkissian has admitted his failure to exhaust, his Title VII claim must be dismissed for failure to state a claim against WVU and Dr. Nuss in her official and individual capacities.

E.    Count V: Breach of Contract

In Count V, Dr. Der Sarkissian asserts a state breach of contract claim.  Dr. Der Sarkissian contends that the defendants breached an employment contract with him by allegedly wrongfully discharging him for alleged violations of WVU's sexual harassment policy.  State agencies have Eleventh Amendment immunity from suit by private citizens raising state claims in federal court.  Const. Amend. XI.  Therefore, WVU has sovereign immunity on this Count. To the extent that Count V can be construed to assert a claim against Dr. Nuss in either her official or individual capacity, such allegations fail to state a claim.  Dr. Nuss cannot be held personally liable for breach of contract because she did not have a contract with Dr. Der Sarkissian in her individual capacity. Further, Dr. Nuss is immune from suit in her official capacity for both money damages and injunctive relief as to Count V.  The Ex Parte Young exception to immunity applies only to continuing violations of federal law.  Because Count V asserts a state law breach of contract claim, Ex Parte Young is inapplicable.

Accordingly, Count V in its entirety fails to state a claim upon which relief can be granted.

F.  Count VI: Defamation

Dr. Der Sarkissian alleges that Dr. Nuss and WVU committed defamation by allegedly falsely and maliciously informing prospective employers that he had committed acts in violation of the WVU's sexual harassment policy.  State agencies have Eleventh Amendment immunity from suit by private citizens raising state claims in federal court.  Const. Amend. XI.  Therefore, WVU has sovereign immunity on this Count.  Additionally, because defamation is a state law claim, Ex Parte Young does not apply and Dr. Nuss, in her official capacity, is immune from suit for both money damages and injunctive relief.

The defamation claim against Dr. Nuss in her individual capacity, however, survives the motion to dismiss.  Individuals are not entitled to sovereign immunity.  Although individuals performing discretionary government functions are generally entitled to qualified immunity, again, the defendants have not squarely presented a qualified immunity argument in their motion to dismiss or reply thereto.  Therefore, this Court makes no ruling at this time with regard to the application of qualified immunity to Dr. Nuss in her individual capacity on the defamation claim.

## V.  Conclusion

For the above stated reasons, the defendants' motion to dismiss the amended complaint and for partial summary judgment is GRANTED IN PART and DENIED IN PART.  The defendants' motion to dismiss is GRANTED as to WVU on Count I, Count IV (to the extent that it advances a claim under Title VII of the Civil Rights Act), Count V, and Count VI.  The defendants' motion to dismiss is GRANTED as to Dr. Nuss in her official capacity on Count IV (to the extent that it advances a claim under Title VII of the Civil Rights Act), Count V, and Count VI.  The defendants' motion to dismiss is GRANTED as to Dr. Nuss in her individual capacity on Count II, Count III, Count IV (to the extent that it advances a claim under Title VII of the Civil Rights Act), and Count V.

The defendants' motion to dismiss is DENIED as to WVU on Count II and Count III.  The defendants' motion to dismiss is DENIED as to Dr. Nuss in her official capacity as to Count I, Count II, and Count III.  The defendants' motion to dismiss is DENIED as to Dr. Nuss in her individual capacity as to Count I and Count VI.

The defendants' motion for partial summary judgment is GRANTED as to Count IV (to the extent that it advances a claim under Title VI of the Civil Rights Act) as to WVU and Dr. Nuss in official and individual capacities.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    May 3, 2007

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE