IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DAVID DER SARKISSIAN,

    Plaintiff,

v.                                             Civil Action No. 1:05CV144
                                                             (STAMP)
WEST VIRGINIA UNIVERSITY
BOARD OF GOVERNORS d/b/a
WEST VIRGINIA UNIVERSITY
SCHOOL OF MEDICINE and
DR. SHELLEY NUSS,

    Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**
**<u>CONFIRMING PRONOUNCED RULINGS OF</u>**
**<u>THE COURT MADE AT THE TRIAL</u>**
**<u>GRANTING IN PART AND DENYING IN PART</u>**
**<u>DEFENDANTS' MOTION FOR JUDGMENT</u>**
**<u>ON PARTIAL FINDINGS</u>**

At the conclusion of the plaintiff's presentation of evidence in the non-jury trial of this case, the defendants orally moved pursuant to Federal Rule of Civil Procedure 52(c) for a judgment on partial findings. Rule 52(c) provides in relevant part:

> If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the Court may decline to render any judgment until the close of all the evidence.

The rule further requires that judgment pursuant to Rule 52(c) be supported by findings of fact and conclusions of law. <u>Id.</u>

Following oral argument, this Court set forth on the record the following pronounced rulings at the trial:

1.   The Court granted defendants' motion for judgment on the defamation count (Count VI);

2.   The Court granted defendants' motion for judgment in favor of Dr. Nuss in both her individual and official capacities on the substantive due process claim;

3.   With regard to the procedural due process claim, the defendants' motion for judgment was denied, at that stage, as to Dr. Nuss in her official and individual capacities because at that point it was unclear as to whether or not Dr. Der Sarkissian had received the manner of due process that is constitutionally required, assuming any due process is required.

4.   The Court granted defendants' motion for judgment on the Americans With Disabilities Act claim (Count II) in favor of defendants West Virginia University and Dr. Nuss in her official capacity.  Dr. Nuss had previously been dismissed from this claim in her individual capacity.

5.   The Court denied defendants' motion for judgment as to West Virginia University and Dr. Nuss in her official capacity on the Americans With Disabilities Act retaliation claim (Count III). The Court had previously granted Dr. Nuss's motion and dismissed the claim against in her individual capacity.  (Tr. 844-849.)

To support the rulings on the defendant's Rule 52(c) motion, this Court makes the written findings of fact and conclusions of law that follow below.

## I. Count I: Due Process

### A. Procedural Due Process

In Count I of the amended complaint, Dr. Der Sarkissian alleges that the defendants violated his due process rights pursuant to the due process clauses of the West Virginia and United States Constitutions. Specifically, Dr. Der Sarkissian alleges that, with regard to the disciplinary process that ultimately resulted in the termination of his medical residency, he was denied "an impartial adjudicator, the right to timely process and equal and evenhanded application of the rules, and full and fair decisions." (Pl.'s Am. Compl. 11.) This claim survived the defendant's motion to dismiss only as to Dr. Nuss in her individual and official capacities.

Dr. Nuss is not entitled to judgment as a matter of law upon a Rule 52(c) motion. Assuming that Dr. Der Sarkissian possessed a protected liberty or property interest in continuing his medical residency, it remains unclear at the close of the plaintiff's case whether he received all manner of process to which he would be constitutionally due when a protected interest is implicated. Accordingly, a judgment on the partial findings is inappropriate as to this issue.

B.  Substantive Due Process

At trial, plaintiff's counsel argued for the first time that Count I of the plaintiff's amended complaint asserts a substantive due process claim as well as a procedural due process claim. To the extent that the amended complaint can be construed to assert a substantive due process claim, the claim fails as to all defendants under the reasoning in Bell v. Ohio State Univ., 351 F.3d 240 (6th Cir. 2006). In Bell, the court stated that "in the absence of an equal protection claim, there is no basis for finding that a medical student's interest in continuing her medical school education is protected by substantive due process." Id. at 251. Additionally, the court noted that "certainly the contention that the medical college's actions were arbitrary or capricious cannot be sufficient [to state a claim for violation of substantive due process]; otherwise judicial review for compliance with substantive due process would become the equivalent of a typical state or federal Administrative Procedure Act." Id. Accordingly, the defendants are entitled to judgment on partial findings as to this claim.

II. Count II: Americans with Disabilities Act
(Failure to Accommodate)

In Count II of the amended complaint, Dr. Der Sarkissian alleges that the defendants have failed to comply with the provisions of Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131, et seq., by allegedly unlawfully

4

discharging Dr. Der Sarkissian from the medical residency program because of his Attention Deficit Hyperactivity Disorder ("ADHD"). This claim survived the defendant's motion to dismiss as to West Virginia University ("WVU") and Dr. Nuss in her official capacity.

Judgment as a matter of law must be granted in favor of WVU and Dr. Nuss in her official capacity because the plaintiff failed to show at trial that he is disabled within the meaning of the ADA. To be entitled to the protections of the ADA, an individual must have a disability within the meaning set forth at 42 U.S.C. § 12102. Specifically, a finding of "disability" requires:

(1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual;

(2) a record of such an impairment; or

(3) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Although working is a major life activity, 29 C.F.R. § 1630.2, the plaintiff has failed to show that his ADHD "substantially limits" his ability to work. Dr. Der Sarkissian testified that, when corrected by medications, his ADHD does not have an effect on his ability to work or engage in other major life activities. Under Sutton v. United Air Lines, Inc., 527 U.S. 471 (1999), a determination of "disability" must be made in light of mitigating measures. The fact that the plaintiff's ADHD is now capable of being controlled by medications indicates that the nature of his condition is temporary rather than substantially

limiting.  Additionally, testimony was received that Dr. Der Sarkissian was reluctant to regularly take medications for his ADHD.  To the extent that Dr. Der Sarkissian may have resisted proper treatment, he cannot be a qualified individual under the ADA.  Tangires v. Johns Hopkins Hosp., 79 F. Supp. 2d 587, 596 (D. Md. 2000). Accordingly, judgment on partial findings is granted in favor of the defendants on this issue.

   III.  Count III: Americans with Disabilities Act Retaliation

   In Count III of the amended complaint, Dr. Der Sarkissian alleges that he was terminated from the medical residency program in retaliation for pursuing remedies to redress the defendants' alleged violations of the ADA.  This claim survived the defendants' motion to dismiss as to WVU and Dr. Nuss in her official capacity.

   Courts analyzing ADA retaliation claims use the same burden-shifting framework (known as the McDonnell Douglas framework) utilized in cases filed under Title VII of the Civil Rights Act and the Rehabilitation Act.  Ennis v. Nat'l Ass'n of Bus. and Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995).  Pursuant to the McDonnell Douglas framework, the plaintiff carries the initial burden of establishing a prima facie case of discrimination. McDonnell Douglas, 411 U.S. 792, 802-04.  Once the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.  Id.  If the employer offers such a reason, the

6

burden shifts back to the plaintiff to establish that the articulated reason was a pretext or coverup for unlawful discrimination. See Murrell v. Ocean Mecca Motel, Inc., 262 F.3d 253, 257 (4th Cir. 2001) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-507 (1993)).

This Court believes that an opportunity to present further testimony regarding the defendants' legitimate, nondiscriminatory reason and the plaintiff's allegation that the defendants' reason is a pretext for discrimination is necessary. Accordingly, judgment on partial findings must be denied as to this issue.

## IV. Count VI: Defamation

Dr. Der Sarkissian alleges that Dr. Nuss and WVU committed defamation by allegedly falsely and maliciously informing prospective employers that he had committed acts in violation of the WVU's sexual harassment policy. This defamation claim survived the defendants' motion to dismiss only as to Dr. Nuss in her individual capacity. Now, upon the defendants' Rule 52(c) motion, the claim against Dr. Nuss individually also fails.

In West Virginia, the essential elements for a successful defamation action by a private individual are:

> (1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury.

See Butts v. Royal Vendors, Inc., 504 S.E.2d 911, 916 (W. Va. 1998)(quoting Crump v. Beckley Newspapers, Inc., 320 S.E.2d 70,

syl. pt. 1 (W. Va. 1983)). A defendant can assert various defenses to a claim of defamation, two of which, privilege and truth, allow a defendant to avoid all liability if established. Crump, 320 S.E.2d at 77.

At the close of his case, the plaintiff failed to show a publication, namely, a nonprivileged communication to a third party. Dr. Nuss's statements to Dr. Barrett, the program director of a medical residency program in Oklahoma to which the plaintiff was seeking entrance, did not constitute publication because the statements were privileged. West Virginia recognizes a qualified privilege for communications by a former employer when solicited by a prospective employer and limited to matters related to the employee's work. Thacker v. Peak, 800 F. Supp. 372, 388 (S.D. W. Va. 1992). Even if Dr. Nuss's statements to Dr. Barrett were not privileged, her statements also failed to satisfy the falsity element of a defamation claim. Dr. Nuss testified that she told the Oklahoma program director that she did not have the plaintiff's consent to discuss matters outside of the plaintiff's academic record. This is not a false statement because Dr. Nuss, indeed, did not have the plaintiff's consent.

To the extent that the plaintiff alleges that Dr. Nuss defamed him by showing Dr. Mackay a letter that Dr. Choby wrote concerning the plaintiff's unprofessional behavior, this claim also fails. It is unclear from the testimony that plaintiff's counsel elicited at

trial that Dr. Nuss ever showed Dr. Choby's letter to Dr. Mackay. Nonetheless, even assuming that the alleged act was established, the act does not constitute defamation. "A qualified privilege exists when a person publishes a statement in good faith about a subject in which he has an interest or duty and limits the publication of the statement to those persons who have a legitimate interest in the subject matter." Swearington v. Parkersburg Sentinal Co., 26 S.E.2d 209, 215 (1943). Dr. Nuss had an interest in the plaintiff's behavior because the plaintiff was a medical resident at WVU and Dr. Nuss, as the internal medicine residency director, was charged with the duty of overseeing the residency program, including the responsibility of monitoring the performance and professionalism of medical residents. Further, Dr. Mackay had a legitimate interest in the subject matter of Dr. Choby's letter because she was one of the women towards whom Dr. Der Sarkissian is alleged to have behaved unprofessionally. Accordingly, no publication occurred because Dr. Nuss had a qualified privilege to share Dr. Choby's letter with Dr. Mackay.

## V. Conclusion

For the above-stated reasons, the defendants' oral motion for judgment on partial findings pursuant to Federal Rule of Civil Procedure 52(c), was GRANTED IN PART and DENIED IN PART. Specifically, judgment as a matter of law was GRANTED in favor of WVU as to Count II (ADA failure to accommodate), in favor of Dr.

9

Nuss in her individual capacity as to Count I (to the extent that a substantive due process claim is alleged) and Count VI (defamation), and in favor of Dr. Nuss in her official capacity as to Count I (to the extent that a substantive due process claim is alleged) and Count II (ADA failure to accommodate). Judgment as a matter of law was DENIED as to WVU on Count III (ADA retaliation), as to Dr. Nuss in her individual capacity on Count I (procedural due process), and as to Dr. Nuss in her official capacity on Count I (procedural due process) and Count III (ADA retaliation). Following this pronounced order, this Court received further evidence and testimony. Findings of fact and conclusions of law as to the surviving issues will be entered by separate order.

    IT IS SO ORDERED.

    The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

    DATED:    March 31, 2008

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE